```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION
```

August Frederick          )
Hertenstein,              )
                          )
          Plaintiff,      ) Case No. 1:06-CV-273
                          )
     vs.                  )
                          )
Western-Southern Financial)
Group,                    )
                          )
          Defendant.      )

O R D E R

This matter is before the Court on Defendant Western-Southern Financial Group's motion for summary judgment (Doc. No. 26) and Plaintiff August Frederick Hertenstein's motion to strike (Doc. No. 34).  For the reasons that follow, Defendant's motion for summary judgment is well-taken and is **GRANTED**; Plaintiff's motion to strike is **MOOT**.

I. Background

Plaintiff August Frederick Hertenstein worked for Defendant Western-Southern Financial Group ("Western-Southern") from October 23, 1995 until his termination on January 3, 2005.  Complaint (Doc. No. 1) ¶¶ 8, 14.  Plaintiff was age 56 at the time.  Id. ¶ 7.  Plaintiff claims in this lawsuit that Western-Southern illegally terminated him because of his age and gender.

1

At the time of his termination, Plaintiff was the Manager of Financial Services in the Policy Services Department. Complaint ¶ 9. Plaintiff's department, consisting of approximately 25 employees, was responsible for receipt and disbursement of funds relating to insurance policies and annuities. Plaint. Dep. at 11. As manager of this department, Plaintiff's specific duties included controlling the budget, managing the productivity of his associates, identifying and developing ways to increase the efficiency of his department, developing and implementing a quality program, and implementing a performance management model. Id. at 12-13.

Importantly, Plaintiff's position had a control function which required him to thoroughly review and verify the accuracy and legitimacy of disbursement requests. Id. at 16-22. Western-Southern had recently emphasized, through additional training sessions, the importance of financial controls and strictly adhering to procedures because a manager's laxness in reviewing disbursement requests led to an employee being able to divert a substantial amount of money to her personal account. See generally id. Plaintiff participated in these additional training sessions and was well aware of the importance of financial controls and exercising due diligence. Id. at 17-20.

In September 2004, Plaintiff's supervisor, Robert Noschang, placed Plaintiff on probation for ninety days because

2

of public comments he made during the Legion celebration which contained sexual innuendo in violation of Western-Southern's EEO policy.[1]  In his deposition, Plaintiff admitted that his comments contained inappropriate sexual content and violated the EEO policy.  Plaint. Dep. at 36-40.  The probation paperwork specifically warned Plaintiff that "[i]f this problem recurs or any other work related problem occurs (including, but not limited to, unsatisfactory attendance, within the next six months, you may be discharged."  Plaint. Dep. Ex. 10; see also Plaint. Dep. at 40 (Plaintiff admits that he knew that while on probation any further violation of company policy could result in discharge).

Plaintiff also received an interim review which outlined other performance deficiencies, including below standard

---

[1]  The Legion celebration recognizes and honors milestone achievements of Western-Southern employees, such as years of service.  The celebration concludes with a formal dinner and dance which the employees refer to as "the prom."  Generally, the supervisor or manager of the honoree will make public remarks about the employee to the department.  In September 2004, one of Plaintiff's associates, Rita Walston, was being honored.  In his public comments, Plaintiff said:

> Rita hun - we need to talk . . . I know tonight is the prom.  I know how much you may want to; but remember good girls say no.  Now, the boys may say a lot of things they do not really mean.  And they may try to convince you of things; however, they only have one thing on their mind.  So tonight, as you are sitting next to Joe Kennedy you will know what Joe is thinking about . . . Rita congratulations on 35 years and thank you for your contributions to the department.

Plaint. Dep. Ex. 11.

productivity results for his department, failure to coach and develop his associates and failure to provide balanced feedback to his associates, failure to enforce basic company policies and procedures, and failure to demonstrate appropriate judgment. Plaint. Dep. Ex. 12.

On December 13, 2004, Plaintiff signed a blank wire transfer authorization form that had been accidently included in some paperwork submitted to him by one of his associates. Plaintiff then forwarded the blank wire transfer form to Noschang for further approval.  Noschang caught the error.  Plaintiff admitted that he signed the wire transfer without making sure it was complete, without reviewing the supporting documentation, and without checking to make sure it was accurate.  Plaint. Dep. at 29.  Plaintiff admitted that he had no knowledge of the transaction concerning the wire transfer when he signed it.  Id. at 30.  Plaintiff further admitted that he violated his job duties by authorizing the wire transfer without verifying the supporting documentation.  Plaint. Dep. at 22, 30.  Plaintiff further conceded (or at least did not dispute) that approving this wire transfer request constituted gross neglect of duty. Id. at 31.

As a result of Plaintiff's handling of this wire transfer request, Noschang initiated disciplinary proceedings which culminated in Plaintiff's termination on January 3, 2005.

Plaintiff was replaced by his assistant manager, Tera Barker, a substantially younger female.  Plaint. Dep. at 49; Doc. No. 26, at 15.

Plaintiff filed a complaint of age and gender discrimination with the EEOC and received a right to sue letter. Complaint ¶ 6.  On May 5, 2006, Plaintiff filed a complaint asserting claims of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and the Ohio Civil Rights Act, Ohio Rev. Code § 4112, et seq., and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Ohio Civil Rights Act.  The complaint also asserted a claim that Western-Southern terminated Plaintiff for the purpose of preventing him from exercising rights under an employee benefits plan, in violation of ERISA, 29 U.S.C. § 1140.  However, Plaintiff voluntarily dismissed this claim on March 28, 2007. Doc. No. 16.

Following discovery, on August 30, 2007, Western-Southern filed the instant motion for summary judgment.  Western-Southern argues that summary judgment on Plaintiff's employment discrimination claims is appropriate, because, inter alia, Plaintiff cannot demonstrate that its reasons for terminating him - violation of the EEO policy, numerous performance deficiencies,

5

and gross neglect of duty concerning the wire transfer - are pretextual.

On September 24, 2007, Plaintiff filed a memorandum in opposition to Western-Southern's motion for summary judgment in which he argued, <u>inter alia</u>, that he had evidence of pretext because he was the only manager supervised by Noschang who received an interim performance review.

Western-Southern filed its reply brief on October 5, 2007. In rebuttal to Plaintiff's argument that he was the only manager to receive an interim performance review in 2004, Western-Southern submitted the affidavit of its counsel. In his affidavit, counsel stated that subsequent to the filing of Plaintiff's brief, he received copies of interim performance reviews of other managers and provided them to Plaintiff's counsel with the explanation that interim performance reviews are not normally kept in the employees' personnel files which were produced to Plaintiff.

Plaintiff then filed a motion to strike counsel's affidavit and any reference to the other managers' interim performance reviews on the grounds that Western-Southern did not produce them during discovery despite the fact that they were responsive to his requests for production of documents. Doc. No. 34. In opposition to the motion to strike, Western-Southern argues that its failure to produce the other interim performance

reviews was unintentional because it believed that producing the personnel files was responsive to Plaintiff's discovery requests. Western-Southern argues further that the Court should consider counsel's affidavit because it corrects the false impression created by Plaintiff that no other manager received an interim performance review.

Although it appreciates Western-Southern's desire not to leave on the record a factual misimpression, the Court finds that even standing alone, Plaintiff's interim performance evaluation does not demonstrate that Western-Southern's reasons for terminating him are pretextual. Plaintiff claims that Western-Southern used his interim performance review to paper his file with negative incidents in order to pave the way for his termination. In his deposition, however, Plaintiff admitted that he had an opportunity at the time he was given the interim performance review to contest the accuracy of the deficiencies highlighted in the review and he did not. Plaint. Dep. at 45-46. Plaintiff also admitted in his deposition that between his May 2004 interim performance review and his September 2004 interim performance review, Noschang discussed with him deficiencies in his management of his department which are consistent with the September review. Compare Plaint. Dep. at 47-49 with Plaint. Dep. Ex. 12. Plaintiff also admitted in his deposition that the comments he made at the Legion celebration, which played a

7

significant part in his poor interim evaluation, violated Western-Southern's EEO policy.  Plaintiff's admissions and the consistency of the criticism of his performance demonstrates that Western-Southern was not simply grasping for material to put in his evaluation in order to lay the groundwork for his termination.

Moreover, the interim performance review predates Plaintiff's admitted dereliction with regard to authorizing the blank wire transfer form.  This event was clearly the catalyst for Plaintiff's termination and Noschang testified that if Plaintiff had not made this error he would not have recommended that he be terminated at the end of his probation despite his performance deficiencies.  Noschang Dep. at 157-58.  Therefore, even if Plaintiff was the only manager who received an interim performance review, as he contends, it is not evidence of pretext because the record demonstrates that he would not have been terminated for the performance deficiencies highlighted in it but for his admitted neglect with the wire transfer authorization.

In summary, in the Court's analysis of the record, Plaintiff's case is not advanced even accepting the contention that he was the only manager to receive an interim performance review.  Therefore, the Court will ignore Western-Southern's counsel's affidavit in support of its reply brief in ruling on the motion for summary judgment.  Technically, this probably

8

amounts to a finding granting Plaintiff's motion to strike, but under the circumstances, the Court views the presence or absence of other interim performance reviews as a non-issue. Formally, however, and for the record, the Court finds that Plaintiff's motion to strike is **MOOT.**

Western-Southern's motion for summary judgment is now ready for disposition.

II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether

there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment

11

"with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.[2]

### III. Analysis

At the outset, the Court notes that Federal evidentiary standards and burdens of proof apply to claims of employment discrimination filed pursuant to the Ohio Civil Rights Act. Peters v. Lincoln Elec. Co., 285 F.3d 456, 469 (6th Cir. 2002). Therefore, federal case law applies to Plaintiff's state law age and gender discrimination claims. Id. Thus, Plaintiff's federal and state claims may be analyzed together. Additionally, because Plaintiff's age and gender discrimination claims are based on the same event and involve the same evidence, the Court will consider them together as well.

A plaintiff establishes a prima facie case of age discrimination by showing: 1) he is a member of a protected

---

[2] In his memorandum in opposition, Plaintiff cites a law review article for the proposition that granting summary judgment is a violation of the Seventh Amendment right to a jury trial. Ignoring for the moment the dubious precedential value of law review articles, this Court is obviously compelled to adhere to Supreme Court case law to the contrary. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 336 (1979)(citing Fidelity & Deposit Co. v. United States, 187 U.S. 315, 319-321 (1902)).

class; 2) he suffered an adverse employment action; 3) he was qualified for the job lost or not gained; and 4) that a person substantially younger than the plaintiff replaced or was selected over him, or that the position remained open while the employer sought other applicants. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 n.12 (6th Cir. 1996); Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994). A plaintiff may also satisfy the fourth element by showing that the defendant treated similarly situated non-protected persons more favorably than the plaintiff. Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

In order to establish a prima facie case of gender discrimination, the plaintiff must adduce sufficient evidence on each of the following elements: 1) he was a member of a protected class; 2) he was discharged; 3) he was qualified for the position; and 4) he was replaced by a person outside the class. Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992). The fourth element can also be satisfied by proof that the employer treated similarly-situated non-protected employees more favorably than the plaintiff. Id. at 582-83.

However, in reverse discrimination cases, such as this gender discrimination this claim, in order to satisfy the first prong of the prima facie case, the plaintiff must demonstrate

13

background circumstances which support the suspicion that the defendant is the rare employer who discriminates against the majority.  Sutherland v. Michigan Dept. of Treasury, 344 F.3d 603, 614 (6th Cir. 2003).  The plaintiff may meet this burden by showing the defendant relied on unlawful consideration of protected characteristics in the past.  Id.

Once the plaintiff establishes a prima facie case of either age or gender discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for its decision.  Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir. 1994).

If the employer meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are pretextual.  Id.  However, the burden of persuasion remains with the plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

The plaintiff may prove pretext in three ways:  1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient to warrant the action taken.  Kline v. Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997).

Although Western-Southern argues that Plaintiff cannot establish a prima facie case of age or gender discrimination, the

14

Court will assume that he can because the record fails to show a genuine issue of fact whether the employer's reasons for terminating Plaintiff are pretextual.³ Indeed, this is one of the more clear-cut cases of justified adverse employment action in recent memory.

Plaintiff admits that his comments at the Legion ceremony were inappropriate and in violation of Western-Southern's EEO policy. He now tries to downplay them by calling them innocuous and relying on the fact that the associate, Walston, said she really was not bothered by them. However, Western-Southern is not obligated to tolerate inappropriate comments from its managers just because the purported victim is not offended. As Western-Southern cogently argues in its reply brief, Plaintiff's comments could have been construed by others as contributing to the creation of hostile work environment, subjecting it to liability to other of its associates.

Plaintiff makes excuses for mishandling the wire transfer and attempts to downplay its significance because no money was lost. Plaintiff argues that pretext is demonstrated because the associate who submitted the blank wire transfer to him was not disciplined. Plaintiff, however, apparently fails to

---

³ The Court notes, however, that Plaintiff likely has not created a prima facie case of gender discrimination because no evidence in this records suggests that Western-Southern is one of the rare employers who discriminates against males.

15

comprehend, even at this late date, that it was his responsibility to utilize and enforce the established financial controls to ensure the legitimacy of each disbursement of funds. It was Plaintiff's job to make sure that any errors made by his staff did not get passed down the line.  There could be no clearer evidence that Plaintiff was not fulfilling this most crucial duty than the fact that he knowingly authorized a blank wire transfer disbursement.  Plaintiff's neglect in processing this transaction is even more remarkable given the recent training he received on the importance of utilizing financial controls.

Plaintiff has not identified any similarly-situated, substantially younger or female manager who Western-Southern treated more favorably than him.  In order to be similarly situated, the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment; rather, the plaintiff must show that all relevant aspects of her employment situation are nearly identical to the other employee's situation. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998).

Julie Cox was substantially younger than Plaintiff. Cox was the manager whose laxness in approving disbursements allowed an associate to embezzle funds and led Western-Southern to institute a new training program on financial controls.

Maccarone Dep. at 54-55; Plaint. Dep. at 16-17.  However, Cox was not treated more favorably Plaintiff.  Cox was terminated for her dereliction of duty too.  Plaint. Ex. E (Doc. No. 31-4, at 39). Moreover, like Plaintiff, Cox was terminated soon after Western-Southern discovered she was not properly reviewing and approving disbursement requests.  <u>Id.</u>  More importantly, however, Cox's mistake was the example that Plaintiff and other managers were supposed to learn from and not make going forward.  Essentially, Plaintiff was working under higher standards for exercising due diligence and ensuring accuracy than Cox.  Therefore, in this regard, Plaintiff and Cox are not similarly-situated.

Jacqueline Hagood intentionally falsified records to improve her customer satisfaction ratings.  As a result, Hagood was placed on probation and demoted from her position as assistant manager of the corporate records department.  As Western-Southern correctly argues, however, Hagood and Plaintiff are not similarly-situated.  Plaint. Exs. F, G (Doc. No. 31-5). Hagood's conduct was intended to bolster the appearance of her job performance; it did not pose any significant financial risk to the company.  In addition, there is no evidence in the record that Hagood was also under discipline for violating the EEO policy.  Thus, Hagood's conduct and Plaintiff's conduct were entirely different.

17

Gary Rhinehimer was eventually terminated for poor performance in his position as the manager of annuity operations. Therefore, in that regard Plaintiff and Rhinehimer were treated exactly the same. Moreover, while review of Rhinehimer's disciplinary reflects perhaps a general indifference toward carrying out his job responsibilities, there is no indication that he made the same kind of glaring and reckless error that Plaintiff made in approving a blank wire transfer request. Plaint. Ex. I. Therefore, in that regard, Rhinehimer's and Plaintiff's conduct were completely different. Accordingly, they are not similarly-situated.

Tina Carson's conduct was also completely different. Carson was placed on probation and demoted from her assistant manager position for abuse of the internet and email for non-business purposes. Plaint. Ex. J. Carson's conduct simply did not create the same degree of financial exposure for Western-Southern as Plaintiff's conduct. Plaintiff and Carson were not similarly-situated.

Plaintiff also tries to argue that pretext is demonstrated because the other performance deficiencies cited in his interim performance review have no basis in fact. This record is so clear, however, that Plaintiff would not have been terminated but for the wire transfer incident that no reasonable

18

juror could conclude that discrimination was the real reason for his termination. In <u>Reeves v. Sanderson Plumbing Products, Inc</u>. 530 U.S. 133 (2000), the Court stated that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." <u>Id.</u> at 148. This is just such a case.

For the reasons stated, Western-Southern's motion for summary judgment is well-taken and is **GRANTED.** The complaint is **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**


**IT IS SO ORDERED**

Date <u>December 11, 2007</u>                <u>   s/Sandra S. Beckwith   </u>
                                  Sandra S. Beckwith, Chief Judge
                                   United States District Court